SWAN *v.* OZARK ROAD IMPROVEMENT DISTRICT.

Opinion delivered November 30, 1925.

1. HIGHWAYS—ISSUANCE OF BONDS BY IMPROVEMENT DISTRICT.—The Harrelson Act (Spec. Sess. 1923, No. 5) prohibiting road improvement districts which had not let any contract, actually done construction work, or issued, sold or delivered bonds, from making improvements without the consent of a majority of landowners, does not prohibit commissioners of such a district from issuing additional bonds to complete an improvement where the district had previously to passage of the act assessed betterments and issued bonds; the assessments having been made on the assumption that this contemplated improvement would be completed.

2. HIGHWAYS—ISSUANCE OF BONDS.—Issuance of bonds for improvement of roads, though requiring an increase in the percentage of betterments to be paid each year, would not be enjoined as being confiscatory, since the protesting landowners had permitted the assessments to be made without protest.

Appeal from Poinsett Chancery Court; *J. M. Futrell,* Chancellor; affirmed.

*Eugene Sloan* and *J. G. Waskom,* for appellant.

*C. T. Carpenter* and *Chas. D. Frierson,* for appellee.

SMITH, J. The Ozark Trail Road Improvement District of Poinsett County was organized by special act No. 277, of the General Assembly of 1919. Road Acts, p. 1130. Additional laterals were provided for and certain sections of the original act were amended by act No. 249 of the unpublished acts of the special session of the year 1920. Additional territory, as well as additional laterals. were taken in and other changes were made by

act No. 475 of the 1921 session of the General Assembly, which provided for a new and general reassessment of all benefits of land and real property within the entire district.   Special Acts 1921, p. 1000.

The principal road of the district was a concrete highway from Marked Tree to the Crittenden County line, but the plans of the district called for the construction of several laterals.   Bonds were issued in a sum exceeding seven hundred thousand dollars, and this money was expended in the construction of the concrete part of the road and in draining and grading the lateral roads which had no hard surface of any kind.

At the 1925 session of the General Assembly act No. 106 was passed, which amended in several particulars the prior acts relating to this improvement district. Acts 1925, page 315.   Section 1 of this amendatory act removed the old commissioners and appointed new ones. The commissioners, after qualifying in the manner required by the act of 1925, caused plans to be prepared for hard surfacing the laterals, and advertised an offering of additional bonds of the district for sale in the sum of $125,000.

Certain landowners in the district brought this suit to enjoin the issuance and sale of these additional bonds, alleging that the district was governed by the provisions of § 25 of act No. 5, Acts Special Session 1923, page 11, commonly known as the Harrelson law.   By this section it is provided that any road improvement district which had not, at the time of the passage of that act, let any construction contract, or had actually done construction work, or had issued, sold or delivered the bonds of the district, should not proceed with the construction of the improvement, unless a majority in number and in value of the landowners in the district should vote that the commissioners proceed with the construction of the improvement.

The protesting landowners in the instant case alleged that, prior to the passage of the Harrelson act,

the improvement district in which their lands were situated had completed the entire improvement, in so far as the improvement was covered by any plans which had ever been prepared and approved, and that because of the provisions of the Harrelson act there was no authority in law for the commissioners to hard surface any of the laterals not covered by plans calling for this improvement, inasmuch as no election of the landowners had been held.

The testimony shows rather clearly, we think, that it was always the intention of the commissioners of the district to put gravel on the laterals, and that the betterments were assessed on the assumption that this would be done; but the testimony also establishes the facts that no plans calling for this surfacing and providing specifications therefor were ever adopted, or were in existence at the time of the first bond sale. The court below therefore found—and properly so—that there were no plans for hard surfacing the lateral roads prior to the passage of the act of 1925. The commissioners appointed by this act caused plans to be prepared and filed for graveling the lateral roads.

The landowners who seek to enjoin the improvement of these laterals say this work is, in effect, a new improvement, and that the commissioners are without power to construct it because this improvement was not a part of the original plans; and, inasmuch as the original plans had been completed when the Harrelson act was passed, the commissioners cannot do work not provided for in the original plans without first securing the consent of the landowners, as provided by the Harrelson act.

After hearing the testimony in the case the court made the following findings of fact.

First. The court finds that the plans of the district as filed did not embrace graveling the laterals until amended recently, and that such amendment is the basis for the additional bond issue now assailed.

Second. The court finds that the plans of the district as actually filed, and not including the recent amendment, have not been fully executed.

Upon these findings of fact, the court dismissed the bill to enjoin the commissioners as being without equity, and this appeal is from that decree.

It is conceded that the $125,000 additional bond issue will not require any increase in the assessment of benefits, the betterments originally assessed being in excess of the outstanding bonded indebtedness and this additional bond issue, but there will be required an increase of about 11 per cent. in the percentage of betterments to be paid each year.

As we have said, the betterments in the entire district were assessed upon the assumption that the laterals were to be improved. This assessment was, of course, irregular and unauthorized, because no plans providing for this part of the improvement had been prepared and adopted and filed as required by law. The failure to do this would have afforded the landowners adjacent to and benefited by these laterals just cause to protest against their assessments, provided they did so within the time and manner limited by the law under which the district was organized.

The controlling question on the present appeal is whether the power of the commissioners to improve the laterals had been destroyed by the provisions of the Harrelson act. Unless this has been done, the special acts relating to this district give the commissioners power to make this improvement, and this is true, notwithstanding the original plans did not call for gravel on the laterals, this being true because the right to change the plans is expressly conferred.

Section 4 of act 277 of the Road Acts of 1919, vol. 1, page 1130, which is the act creating the district, makes it the duty of said commissioners "to proceed as rapidly as possible with the improvement of the roads herein-

before described, improving them in such manner as they deem to the best interests of the property owners. * * *."

Section 2 of act 249, approved February 20, 1920, also provides that "the commissioners shall grade, drain and contract the laterals authorized by this section of this act in such manner and of such materials as they shall deem for the best interests of the property owners of the district."

This express authority was carried forward in the amendatory act No. 475 passed at the 1921 session of the General Assembly, Acts 1921, page 1000, for by § 3 of this act it is provided that "it is hereby made the duty of the commissioners of the Ozark Trail Road Improvement to complete said roads, and to cover so much thereof as is advisable with a hard surface."

We are of the opinion that the provisions of the Harrelson act did not apply to this district. It had actually issued and delivered over seven hundred thousand dollars in bonds at the time that act was passed, and it had not completed all parts of the improvement called for by the valid plans of the district. Indeed, the chancellor found that the original and approved plans of the district had not been fully completed at the time of the hearing from which this appeal is prosecuted, and the testimony sustains that finding of fact. This being true, the Harrelson act, by the express provisions of § 25 thereof, could not and did not apply to this district, and the commissioners remained vested, notwithstanding the Harrelson act, with all the powers conferred by the original act creating the district and the subsequent amendatory acts, and, as we have already seen, these acts gave the commissioners power to place gravel on such of the laterals as they saw proper to do.

This view is reenforced by a consideration of the provisions of act 106 of the Acts of 1925. This act is a legislative finding of fact that the Harrelson act did not apply to this district. But, if it did originally apply, the act of 1925 must be regarded as amendatory thereof,

and operating to take this district out of the provisions of the Harrelson act.

This act 106 contains fifteen sections, and is rather comprehensive in itself. It clearly recognized that the district had not completed the improvement which it was organized to construct. Section 7 contains provisions and limitations under which contracts exceeding five hundred dollars in cost may be let, and § 13 contains authority for the issuance of additional bonds and limitations as to the price for which they may be sold.

It is insisted that the decree in the instant case is in conflict with the decree in the case of *Boyd* v. *Ozark Trail Road Improvement District,* 168 Ark. 525. In the former case property owners in the district, whose lands were adjacent to a lateral which had only been drained and graded, complained of their assessments because the lateral had not been hard surfaced; the assessments being based upon the theory that this would be done. There was involved in that case no question of the power of the commissioners to hard surface the lateral. The complaint of the landowners was that this had not been done. The same chancellor presided in the trial of both cases in the court below, and we think there is no inconsistency in the decrees in the two cases, and certainly nothing was decided by us in the former appeal which supports the contention of the protesting landowner here that the commissioners are without power to do the thing which it was there contended had not been done, that is, to hard surface the lateral.

Relief in the former case was denied the protesting landowners on the theory that the assessment of benefits from which they appealed was not a general assessment, but was a mere correction of obvious errors, and that the landowners should have appealed from the prior general assessment, and, as they had not done so within the time limited for that purpose, they were barred by

the limitation on the right of appeal imposed by the acts under which the assessments had been made.

It is finally insisted that the increase in the per cent. of the betterments which it will be necessary to collect to improve the unsurfaced laterals will make the entire tax in the district confiscatory. A sufficient answer to this contention is to say that this change in plans does not involve any increase in the assessment of betterments, and the landowners here protesting permitted their assessments to become final by failing to complain against them within the time allowed them by law for that purpose. Indeed, the equities of the case appear to be against the protesting landowners in the present case. If the relief prayed by them were granted, the owners of land adjacent to the laterals would be required, under the decree in *Boyd* v. *Ozark Trail Road Imp. Dist., supra,* to pay taxes based upon the assumption that the laterals would be improved which, according to the contention of the protesting landowners in the instant case, should not be done, because this part of the improvement was not covered by the original plans adopted and approved by the district. But, notwithstanding the fact that these plans did not call for this improvement, authority to improve these laterals is found in the provisions of the act allowing the commissioners to change the plans. There is no constitutional objection to this legislation, as the improvements may be constructed within the betterments already assessed.

The decree is correct, and is therefore affirmed.